**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ERIC CADE**,

        Petitioner,

v.                                                  Civil Action No. 2:13cv45
                                                     (Judge Bailey)

**TERRY O'BRIEN**,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on July 1, 2013, by filing a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241, together with a Motion for Preliminary Injunction and Motion for Expedited Hearing. On that same date, the petitioner was sent a Notice of Deficient pleading which advised the petitioner that he must either pay the $5.00 filing fee or submit an Application to Proceed *in forma pauperis*. On July 11, 2013, he paid the $5.00 filing fee. Accordingly, on July 11, 2013, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to show cause why the petition should not be granted.

On August 1, 2013, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on August 2, 2013. On August 23, 2013, the petitioner filed a Response.

### II. Factual Background

The petitioner is currently incarcerated at the Federal Correctional Complex in Hazelton, West Virginia. He is serving a 42 month sentence imposed by the United States District Court for

the District of Maryland on August 25, 2011, following his conviction for Use of an Unauthorized Access Device in violation of 18 U.S.C. § 1029(a)(2); Bank Fraud in violation of 18 U.S.C. § 1344; and Aggravated Identity Theft in violation of 18 U.S.C. § 1028(a). (Doc. 20, pp. 1-2). The petitioner's projected release date, via Good Conduct Time Release, is September 9, 2014.(Doc. 20, p.3).

On October 14, 2012, the petitioner was recommended for placement in a Community Corrections Center for a period of 120-150 days. Although the respondent alleges that when the referral was made, the petitioner's anticipated release date was accidently noted as September 12, 2013, the form the respondent references indicates an anticipated release date of September 12, 2014.[1] (Doc. 21-2). On May 8, 2013, the petitioner was transferred to the Hope Village Residential Re-entry Center ("RRC"). On May 9, 2013, it was discovered that the petitioner had been erroneously transferred to the RRC, and he was taken into custody and placed at the D.C. Jail from May 9, 2013, until May 22, 2013, when he was returned to Hazelton. (Doc. 21-5). On June 4, 2013, the petitioner was again reviewed for RRC placement and recommended for a range of 230-260 days. (Doc. 21-6).

### III. Issues Presented

In his petition, the petitioner states that the ground for his petition is:

(1) "In plain error, the respondent named herein released a legally blind prisoner on compassionate release to a halfway house, then subjected him to recall under irrational, egregious and opaque abuse of discretion in violation of his Fifth Eighth and possibly 15th Amendments."

---

[1] It is unclear whether the form was "corrected" after the petitioner arrived at Hope Village, his designated RRC, or whether the form was "corrected" by staff at USP Hazelton, or whether the form was never incorrect.

(Doc. 1, p.5).

For relief, the petitioner then requests this Court mandate the BOP to immediately release him to home confinement to serve the remainder of his sentence.

In his response, the respondent argues that the petition should be dismissed because:

1. The petitioner failed to exhaust his administrative remedies as to the issues raised in his petition;

2. The BOP determination regarding the duration of the petitioner's residential re-entry center placement is not subject to judicial review;

3. The Bureau of Prisons did not abuse its discretion with regard to the RRC review and referral of the petitioner's case pursuant to the Second Chance Act;

4. The petitioner is not entitled to injunctive relief; and

5. The plaintiff is not entitled to relief in the form of Writ of Mandamus.

In reply, the petitioner goes through a thorough critique of the response and points to numerous statements made under the "veil of perjury." In addition, the petitioner argues that "jurisdiction" was transferred from USP Hazelton to Hope Village, and no paperwork exists transferring "jurisdiction" back to USP Hazelton. The petitioner also reiterates his treatment in the D.C. Jail and addresses what he believes to be violations of his constitutional and civil rights. The petitioner also notes that he had no reason to "dispute" a 16-month pre-release approval because he filed a medical referral under the color of 'compassionate release" to the warden pursuant to section 3582(c)(1)(A) of Title 18. Finally, the petitioner argues that "while the BOP may have erred in a 16-month pre-release date to a RRC facility, it must now 'take responsibility for the harm it has caused and future harm it could cause if the preliminary injunction is not granted'" (Doc. 24, p.14).

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass

4

v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Motion for Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison*, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard of summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. V. Catrett,* 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact. *Celtotex* at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." *Anderson* at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* at 587 (citations omitted).

### V. The Second Chance Act

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18

6

U.S.C. 3621(b) are as follows:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## VI. Analysis

### A. Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that the instant § 2241 petition should be dismissed because the petitioner failed to exhaust his administrative remedies. The petitioner maintains that the respondent's argument is without merit and is misplaced.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. *See LaRue v. Adams*, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 113 (1997)).[2]

---

[2] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. *See Larue* at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

B.  **18 U.S.C. § 3625**

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges, among

---

1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

other things, the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerated in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular

9

institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred.

In the instant case, the petitioner first argues that he was approved for compassionate release by the Warden of USP Hazelton for a period of sixteen months. For reasons the undersigned cannot explain, the respondent has not addressed this claim. However, it is clear that the initial referral to an RRC, dated October 4, 2012, and which led to the petitioner's transfer to Hope Village on May 8, 2013, was not based on a compassionate release. In support of his claim, the petitioner cites 18 U.S.C. § 3582(c)(1)(A). This section of the Code, entitled Imposition of a sentence of imprisonment provides as follows:

> (c) Modification of an imposed term of imprisonment - The court may not modify a term of imprisonment once it has been imposed except that –
>
> > (A) the court upon motion of the Director of the Bureau of Prisons, may modify a term of imprisonment once it has been imposed except that –
> >
> > > (I) extraordinary and compelling reasons warrant such a reduction; or
> > >
> > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission....

Inasmuch as the petitioner is not seventy years old and was only sentenced to 42 months incarceration, it is clear that section (ii) does not apply. Moreover, to the extent that section (i) might be available to the petitioner, a warden cannot grant compassionate release. Instead, the Director of the BOP must request said relief from the sentencing court. Not only does the petitioner not allege that such a request was made, a review of the petitioner's criminal docket, makes it is clear that no such request has been made or granted. See Criminal Docket for Case # 8:10-cr-00261-AW-1, District of Maryland (Greenbelt).[3] Furthermore, it would not appear that release to a halfway house for more than the maximum twelve months constitutes a modification of an imposed sentence.

Next it is undisputed that the petitioner was originally recommended for 120-150 days of community placement on October 4, 2012. It is also undisputed the petitioner's actual anticipated release date is September 12, 2014. Therefore, his release to Hope Village on May 8, 2013, was approximately 16 months prior to his anticipated release date and in excess of the maximum twelve months provided for in the Second Chance Act. However this error occurred, it was clearly an error, and the BOP was fully within its statutory obligation to return the petitioner to Hazelton.

Although the undersigned has been unable to find any cases directly on point, holdings from a similar scenario are relevant. The Fourth Circuit has previously held that a convicted person's reincarceration following an erroneous release, even after enjoying that state of freedom for an extended period of time, does not violate his substantive due process rights unless it is 'shocking to the contemporary conscience.' See Hawkins v. Freeman, 195 F.3d 732, 741 (4th Cir. 1999); see also

---

[3] Available on PACER.

Herndon v. Ziegler, 2009 WL 5216979, *3 (N.D.W.Va. December 30, 2009) (holding that the BOP's reincarceration of a convict who had been previously been erroneously released from custody did not violate his due process rights). The Fourth Circuit's application of the 'shock the conscience' standard to cases of alleged erroneous release from custody places a very high burden on the petitioner. See Hawkins at 746. In Hawkins, a state defendant was mistakenly granted parole. Twenty months later, the state noticed the error, revoked the parole, and arrested and reincarcerated the defendant. Hawkins, 195 F.3d at 750. The Fourth Circuit found that this action did not meet the threshold "shock the conscience" test and was not, therefore, the kind of executive conduct that would support a substantive due process claim. Id. at 746. Notably, the Fourth Circuit determined:

> To declare the Parole Commission's decision so "egregious and "outrageous" as to "shock the contemporary conscience" under these circumstances, we would have to believe that it was infected or driven by something much worse – more blameworthy – than mere negligence, or the lack of proper compassion, or sense of fairness, or than might invoke common law principles of estoppel or fair criminal procedure in order to hold the state to its error. To keep things in constitutional proportion, we would have to see it as a mindless "abus[e of] power," or a deliberate exercise of power "as an instrument of oppression," [Collins v. Harker Heights, 503 U.S. 115, 126 (1992)] (quotation omitted", or power exercised "without any reasonable justification in the service of a legitimate governmental objective." [County of Sacramento v. Lewis, 118 S.Ct. 1708, 1716 (1998)].

> Id.

As described in Hawkins, the "threshold question" for any substantive due process claim based on executive act is "whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" 195 F.3d at 738 (quoting Lewis, 188 S. Ct. at 1716). "If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest." Hawkins, 195 F.3d at 738.

Whether an executive act meets this threshold test is, necessarily, an "imprecise" inquiry. Id. at 741. "[S]imple negligence," for example, "never can support a claim of substantive due process violation by executive act." Hawkins, 195 F.3d at 742 (citation omitted). Rather, the petitioner must point to conduct that is "' intended to injure her in some way unjustifiable by any government interest.'" Id. at 742 (quoting Lewis, 188 S. Ct. at 1718).

In this case, there is no indication that the Bureau of Prisons harbored any vindictive or nefarious purpose in "releasing" the petitioner to Hope Village and then "re-incarcerating" one day later. At worst, it would appear the staff at Hazelton was negligent in transferring the petitioner to a half-way house on a date that was four months beyond the twelve month maximum afforded under the Second Chance Act. Moreover, to the extent that the petitioner alleges that he was "arrested" by marshals with drawn guns and incarcerated for a period of time in a D.C. jail that posed a potential hazard to his safety and well-being, those claims are not ones which find redress in a habeas petition. Instead, to the extent that the petitioner may be alleging that he was subjected to excessive force or inhuman living conditions, he must raise those allegations in a civil rights complaint.

In summary, assuming all factual allegations of the petitioner to be true, the undersigned finds that it does not "shock the conscience" for the petitioner to be returned to Hazelton until he has either served the balance of his federal sentence or is again transferred to a RRC pursuant to the Second Chance Act for a period not to exceed one year.

Finally, the petitioner, since his return to Hazelton, has been again reviewed for RRC placement. On June 4, 2013, he was recommended for 230-260 days, significantly more than the original 120-150 days. In making this recommendation, staff specifically noted that: "(1) There are available Residential Re-Entry Centers (RRC) in his release area; (2) The nature and circumstances

of the offense are that he is eligible for RRC placement as there are no extenuating circumstances that would preclude placement; (3) The history and characteristics of the inmate are: he intends to obtain gainful employment through a RRC placement; (4) the sentencing court in the District of Maryland did not make any statement on the Judgment and Commitment Order regarding RRC placement; and (5) There is no pertinent policy by the Sentencing Commission.(Doc.21-6).

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending his 230-260 day placement. Furthermore, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

### VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, Motion for Summary Judgment (Doc. 12) be **GRANTED,** and the petitioner's §2241 petition be **DENIED** and **DISMISSED with prejudice**. It is further recommended that the petitioner's Motion for Preliminary Injunction and Expedited Hearing (Doc. 2) be **DENIED** because it is clear that the petitioner has no chance of success for the same reasons he is not entitled to relief pursuant to his § 2241 petition.[4]

Within fourteen (14) days after being served with a copy of this Recommendation, any party

---

[4] The standard for granting injunctive relief in this circuit is set forth in Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342 (4th Cir.2009). As articulated in Real Truth, before a court may grant injunctive relief, the movant is required to establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Id. at 346 (citations omitted).

may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 3, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE